IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NILDA GOMEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 5911 |
| ) | |
| LT. RICCIO, GEORGE MELANIS, ) | |
| JORGE RIVERA, and the CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is defendants' motion for summary judgment. For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

This is a civil rights action by plaintiff Nilda Gomez against the City of Chicago (the "City"), Chicago Police Lieutenant Anthony Riccio, and Chicago Police Officers George Melanis and Jorge Rivera. Plaintiff claims that after her arrest for domestic battery, she was falsely charged with felony battery to police officers, detained, and subjected to a strip search and a body cavity search in retaliation for having previously filed a civil rights suit against defendant Riccio, among others.

Many of the relevant facts, which follow, are undisputed. In August 2000, Nilda lived in the second floor unit at 3725 West

Lyndale in Chicago. Her sister, Midna Noriega, lived in the first floor unit with her husband, Ricardo Noriega, and their children. On the evening of August 17, 2000, around 7:30 p.m., Nilda was downstairs in Midna's unit and began verbally arguing with Midna. Ricardo, who worked a night shift and had been sleeping, awakened and heard Nilda and Midna yelling. Ricardo then called 911, said that there was a family dispute, and requested that police officers come to the residence. Some sort of confrontation between Ricardo, Midna, and Nilda ensued. Shortly thereafter, Nilda went upstairs to her apartment.

After Nilda went upstairs, Officers Melanis and Rivera arrived in response to the 911 call. The officers came into the front room of the first-floor apartment and asked Ricardo what was going on. Ricardo said that he had called the police because Nilda had been starting trouble and would not leave the apartment. The officers asked if anyone was hurt and noted that Ricardo had a bloody cut on his wrist. Ricardo replied, "[T]hat must have been when [Nilda] swung at me." (Tr. of Dep. of Ricardo Noriega at 37, Defendants' Local Rule 56.1 Statement of Facts, Ex. F.) The officers asked whether the Noriegas wanted to file complaints against Nilda, and they responded that they did. They understood that Nilda would be arrested if they filed these complaints. Ricardo signed a complaint for domestic battery, stating that Nilda pushed and grabbed his arms and scratched him, causing his wrist to bleed and

redness on his arms. Midna signed a separate complaint for domestic battery, stating that Nilda had grabbed and squeezed her.

Nilda then came downstairs again, at which the point the officers placed her in handcuffs and led her outside to their police car. According to the officers, the Noriegas, and a neighbor who was a witness, Nilda resisted being moved from the residence to and into the car by refusing to move her feet, squirming, and kicking the officers. The officers could not get her into their car, so they called for a paddy wagon. Nilda, on the other hand, claims that she did not resist arrest in any way, and also disputes that the officers tried to put her in their police car.

Nilda was transported to the police station. Around 9:30 p.m., Officers Melanis and Rivera completed an arrest report that charged her with the following crimes: domestic battery (two counts); resisting a peace officer (one count); and aggravated battery to a peace officer (two counts). (The charges of domestic battery and resisting a peace officer were misdemeanors, and the aggravated battery charges were felonies.)

According to the arrest report, the charges were approved by defendant Lieutenant Anthony Riccio. At that time, Lieutenant Riccio, along with other police officers, was a defendant in a suit that had previously been brought by plaintiff in the Circuit Court

of Cook County, entitled Harris v. Nikeas.[1]  (At the time of the filing of the Second Amended Complaint in this action, the Harris case was still pending.)  Officers Melanis and Rivera are not parties to the Harris case.

Plaintiff asserts that Lieutenant Riccio caused or directed a strip search and a body cavity search of plaintiff for the sole purpose of harassing her and that Lieutenant Riccio came into her holding cell to harass and taunt her.  Plaintiff was booked at the Cook County Jail and held in custody pending a bond hearing on the aggravated battery charges.

The resisting a peace officer and domestic battery charges were eventually dropped, but Nilda went to trial on the aggravated battery charges.  She was acquitted by a jury.  According to plaintiff, the aggravated battery charges are based on false claims that plaintiff intentionally kicked Officers Melanis and Rivera in the course of the domestic battery arrest and are in retaliation for plaintiff's suit against Lieutenant Riccio.  Plaintiff claims that the defendants "have fabricated 'evidence' in support of their claims, including witness statements, have communicated false and misleading information to various Cook County State's Attorneys, and have withheld exculpatory information from various Cook County State's Attorneys."  (Second Amended Complaint, ¶ 12.)

---

[1] Plaintiff's name was Nilda Harris, not Nilda Gomez, at the time that suit was filed.

Plaintiff filed this action on August 19, 2002. The current complaint is the Second Amended Complaint, which was filed on October 27, 2004. The Second Amended Complaint sets forth the following claims: § 1983 claims for violation of plaintiff's Fourth, Fourteenth, and First Amendment rights (Counts I-III); intentional infliction of emotional distress ("IIED") (Count IV); malicious prosecution (Count V); assault and battery (Count VI); and violation of 725 ILCS 5/103-1, a state statute setting forth the rights of an arrestee (Count VII). The Officers, who are sued in their individual capacities, are named as defendants in all of the counts. The City is named as a defendant in Counts IV, V, VI, and VII under a respondeat superior theory. Plaintiff seeks nominal, compensatory, and punitive damages as well as attorney's fees.

Defendants now move for summary judgment.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v.

Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

We will first address plaintiff's contention that defendants' motion must be stricken because defendants have attached only excerpts of deposition testimony as exhibits to their motion, and "[p]roviding the court with full copies of deposition transcripts cited in a motion for summary judgment is proper pleading practice." (Plaintiff's Response at 1.) We reject this argument. Although we can conceive of cases in which it may be necessary for a party to provide entire deposition transcripts, this is not one of them. We know of no authority that justifies striking an entire motion where excerpts of transcripts are provided. Our Local Rules do not require that full transcripts be provided in conjunction with a motion for summary judgment, and the case cited by plaintiff in support of her argument addressed only the state of the briefing

in that particular case.[2]  Moreover, plaintiff was free to attach to her response any other transcript excerpts counsel believed to be pertinent.

We also note at the outset that some of defendants' arguments do not go to whether there are genuine issues of fact for trial, but rather are those that more properly would have been made on their motion to dismiss.  They are attempting to get a second bite at the apple, but we will address all of their arguments anyway.

## A.   **Fourth Amendment (Count I)**

Defendants' first argument is that they are entitled to summary judgment to the extent that Count I is premised on false arrest.  Defendants previously moved to dismiss the false arrest claim because plaintiff was initially arrested on the domestic battery charges and did not appear to contest the existence of probable cause to arrest her on those charges.  We rejected defendants' argument, noting that the law in the Seventh Circuit was that "there must be probable cause for a charge <u>closely related</u> to the charge upon which the plaintiff was ultimately prosecuted."  (Memorandum Opinion of July 7, 2004 at 6.)  We found that the existence of probable cause to arrest plaintiff on the domestic battery charges did not bear on whether there was probable cause for the felony battery charges and associated proceedings because

---

[2]  Plaintiff cites <u>Valenti v. Qualex, Inc.</u>, 970 F.2d 363, 368 n.4 (7th Cir. 1992), which does not set forth any general standard for "proper pleading practice" or even mention the phrase "proper pleading practice."

the two types of charges were based on completely different purported conduct and therefore were not "closely related." (Id. at 6-7.)

Defendants now call our attention to a Supreme Court opinion that was issued a few months after our ruling in this case, Devenpeck v. Alford, 543 U.S. 146 (2004). In Devenpeck, the Supreme Court held that a warrantless arrest by a police officer is lawful under the Fourth Amendment as long as there is probable cause to believe that <u>any</u> criminal offense has been or is being committed. See id. at 593-94. The Court stated: "The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with [] precedent." Id. at 594.[3]

Defendants contend that pursuant to Devenpeck, they are entitled to summary judgment on the false arrest claim because there is no genuine issue that there was probable cause to arrest plaintiff for domestic battery. "Probable cause has been defined as facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000) (quotation marks and brackets omitted). "Contrary to what

---

[3]  Plaintiff weakly attempts to distinguish Devenpeck, but we are unpersuaded.

its name might seem to suggest, probable cause demands even less than probability; it requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. Applying this standard, we have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." Id. (internal quotation marks and citations omitted).

When the parties were briefing the motion to dismiss, it did not appear that plaintiff was claiming that she was falsely arrested for domestic battery. Now, however, she argues that there is a genuine issue of material fact regarding probable cause for her arrest for domestic battery.

Plaintiff's first contention is that she "does not have sufficient information to make a conclusive determination as to whether the officers had probable cause to arrest even on domestic battery." (Plaintiff's Response at 2.) Plaintiff asserts that "[t]he Defendant officers have not yet been deposed and it would be helpful to know what information was given to the officers prior to Plaintiff's arrest and what facts the officers relied upon in making their alleged probable cause determination." (Id.)

Although plaintiff does not invoke Federal Rule of Civil Procedure 56(f), that is the applicable rule when a non-movant requests additional discovery in order to respond to a summary

judgment motion. The rule provides: "Should it appear from the affidavits of a party opposing [a summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may . . . order a continuance to permit . . . depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f).

Plaintiff's argument is rejected for several reasons. Plaintiff does not present an affidavit and thus does not make a proper Rule 56(f) argument. More importantly, she fails to explain why she has not yet taken the depositions of the officers in this case that has been pending since 2002, and fails to indicate that she even desires to take those depositions. It is significant that plaintiff does not ask for additional time to take the officers' depositions in order to respond to the summary judgment motion, but merely contends that the fact that she has not conducted those depositions somehow creates a genuine issue of material fact. Furthermore, it is not as if there is no testimony from the officers. We have the transcript of plaintiff's aggravated battery trial, at which both Officers Melanis and Rivera testified regarding the circumstances of the arrest.

The evidence is as follows: Ricardo Noriega called the police. Officers Melanis and Rivera went to the Noriegas' home in response to a call from the dispatcher notifying them of a domestic disturbance there. When the officers arrived, they asked what was

going on. Ricardo told them that Nilda had been starting trouble. The officers noticed a cut on Ricardo's wrist, and Ricardo stated that it must have been the result of Nilda swinging at him. The officers were also informed that Nilda grabbed Midna in the course of the fight. Plaintiff admits that the officers asked the Noriegas if they wanted to press charges against Nilda, and the Noriegas both answered in the affirmative. It is undisputed that Ricardo signed a complaint for domestic battery stating that Nilda had pushed, grabbed, and scratched him and that Midna also signed a complaint for domestic battery, stating that Nilda had grabbed and squeezed her. After the Noriegas agreed to sign complaints against Nilda, the officers arrested Nilda.

"[S]o long as a reasonably credible witness or victim informs the police that someone has committed a crime, the officers have probable cause to place the alleged culprit under arrest." Woods, 234 F.3d at 987. It is undisputed that the Noriegas informed Officers Melanis and Rivera that Nilda had committed domestic battery against them and that they wished to sign complaints against her for that conduct. Plaintiff's brief contains a lengthy discussion of what may have actually happened between Nilda and the Noriegas before the officers arrived; plaintiff argues that Ricardo "was the perpetrator." (Plaintiff's Response at 7.) But the truth of that incident is irrelevant to what the officers knew and what they were told when they arrived on the scene. "[O]nce . . . a

reasonably credible complaint has been made, the existence of probable cause to arrest does not depend upon the actual truth of the complaint." Woods, 234 F.3d at 987 (citing Kelley v. Myler, 149 F.3d 641, 647 (7th Cir. 1998) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth that matters.").

Plaintiff also fails to raise a genuine issue that Ricardo and Midna were "reasonably credible" witnesses. Plaintiff makes much of the fact that Ricardo "far exceeded Plaintiff in size, weight and strength." (Plaintiff's Response at 7.) In our view, Ricardo's physical stature has no bearing on the credibility of his statement to the officers about Nilda's actions. The evidence is not that Ricardo told the officers that Nilda beat him up or overpowered him; it is simply that she swung at him and scratched him.

Plaintiff has failed to come forward with any evidence creating a genuine issue for trial on her false arrest claim. Accordingly, defendants are entitled to summary judgment on that claim.

Plaintiff's Fourth Amendment claim in Count I is not solely based on false arrest; plaintiff also alleges that the search of her person and the length of her detention violated the Fourth Amendment.[4] Defendants's briefs devote much attention to false

---

[4] Plaintiff's theory is that because of the false aggravated battery charges, she was subjected to a body search and detained far longer than she would have been if she had only been charged with domestic battery.

arrest but fail to discuss the search at all[5] and give short shrift to the detention.[6] Furthermore, defendants' statement of material facts does not include any fact statements or citations to supporting evidence regarding the events that occurred after plaintiff was arrested and charged. Because defendants have failed to properly support their motion, it will be denied as to the Fourth Amendment claims relating to the search and detention.

**B.  First Amendment (Count III)**

In Count III, plaintiff alleges that the initiation of false charges in retaliation for her having filed the Harris suit against Lieutenant Riccio deprived her of the rights secured to her by the Petition Clause of the First Amendment. Defendants attempt to

---

[5]  Plaintiff is the only party who discusses the body search, so it is not necessary that we address plaintiff's entire argument, but it is notable that plaintiff relies in part upon an Illinois state statute in support of her argument that the strip search was unlawful. We wish to point out the Seventh Circuit's edict that violations of state statutes are irrelevant to a § 1983 constitutionality inquiry, see White v. Olig, 56 F.3d 817, 820 (7th Cir. 1995). Putting aside the state statute, though, the Seventh Circuit has held that strip searches of arrestees, in certain circumstances, can be unreasonable and thereby violate the Fourth Amendment. See, e.g., Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1273 (7th Cir. 1983).

[6]  The only fact mentioned in defendants' briefs regarding detention is that plaintiff was sent to Central Bond Court on August 18, 2000, the day after plaintiff was arrested. The exhibit cited in support of this statement is Exhibit D, which consists of copies of the Arrest Report and a report regarding the moving of plaintiff into the lockup facility. Both reports are bad copies and are very difficult to read, but neither appears to reflect the time and date plaintiff was sent to bond court. Defendants also cite Exhibit E in support of their cursory argument that "[p]laintiff was . . . lawfully transferred to Central Bond Court and released within the reasonably feasible, prescribed 48 hours." (Defendants' Joint Memorandum in Support of Motion at 6.) Exhibit E is a bond form that is dated "8/18/00" at 9:12 pm, but it is not clear from the form that this was the time plaintiff was released. In any event, not only do defendants fail to set forth the material facts regarding plaintiff's detention and search, they cite very little authority in support of their position. The authority that defendants do cite sets forth only general propositions.

extend their <u>Devenpeck</u> argument regarding false arrest to this claim with no citation to authority whatsoever that <u>Devenpeck</u> extends to a First Amendment claim.  We agree with plaintiff that whether the officers had probable cause to arrest plaintiff is not relevant to her allegations that defendants retaliated against her for having filed the <u>Harris</u> suit by fabricating evidence on the aggravated battery charges.  Defendants' motion for summary judgment will be denied as to Count III.

**C.    Fourteenth Amendment Due Process (Count II)**

In Count II, plaintiff alleges that defendants violated her constitutional right to a fair trial by fabricating evidence, including witness statements, and by lying to and withholding information from various Cook County assistant state's attorneys.

Defendants' first argument regarding Count II is that "[p]laintiff's assertions that the Officers instigated the proceedings against her belies her own statements that she was arrested on the signed complaints of her sister and brother-in-law and that those charges were not withdrawn by them." (Defendants' Joint Memorandum in Support of Motion at 8.)  This contention misses the point, as plaintiff was tried on the aggravated battery charges, which were undisputedly instigated by the Officers, not the Noriegas.  Defendants fail to cite any authority for their suggestion that probable cause for arrest on the domestic battery

charges somehow bars the due process claim pertaining to the aggravated battery charges.[7]

Defendants also maintain that "[t]he decisions about which, if any, charge would proceed to trial is within the discretion of the prosecutor and not the police," id., without any explanation of why this entitles them to summary judgment on plaintiff's claim. The argument is rejected because the basis for plaintiff's claim is not the charging decision itself, but the officers' alleged misrepresentations upon which the decision was based, as well as the officers' other alleged conduct relating to the evidence after the charging decision was made.[8]

Defendants' next argument is that because plaintiff was acquitted, she has no constitutional claim that she was denied a fair trial. Plaintiff disagrees. There are two cases on point from this district; one supports defendants' position, and one supports plaintiff's.[9] We adopt the well-reasoned analysis of the case cited by plaintiff, Carroccia v. Anderson, 249 F. Supp. 2d 1016 (N.D. Ill. 2003) (Kennelly, J). In Carroccia, an acquitted murder defendant alleged that police officers concealed and

---

[7] The same argument is made with regard to plaintiff's IIED and malicious prosecution claims in Counts IV and V and is rejected in regard to those claims as well.

[8] This argument is also made with regard to plaintiff's malicious prosecution claim in Count V. Defendants appear to imply that a police officer cannot be liable for malicious prosecution, but fail to cite any supporting authority.

[9] Defendants also cite two Seventh Circuit cases that are inapposite.

fabricated evidence, thereby violating his right to a fair trial. Rejecting the defendants' contention that the acquittal barred plaintiff's due process claim for a violation of Brady v. Maryland, 373 U.S. 83 (1963), Judge Kennelly stated:

> [A] trial is not rendered fair simply because it ultimately results in an acquittal. As the Court stated in Brady, "our system of the administration of justice suffers when any accused is treated unfairly. . . . A prosecutor that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." . . . If courts prohibit a criminal defendant from making a civil claim for concealment of material exculpatory evidence simply because his trial resulted in an acquittal, we tolerate law enforcement misconduct simply because the defendant was able to overcome it by other means. . . . The question is whether, at the time the evidence is concealed, it could be expected to affect the outcome of the case. An eventual acquittal may suggest that the withheld evidence was not material. But an acquittal alone does not show that police officers complied with Brady or that the defendant's trial was fair. . . . The constitutional value at stake . . . is due process: the means, not the ends of his trial. . . . If exculpatory evidence was wrongly withheld, [plaintiff's] acquittal did not eliminate the due process violation that had already occurred by the time of the acquittal.

249 F. Supp. at 1023-24 (citation omitted).[10]

Defendants' final argument regarding Count II is that plaintiff has no evidence that the officers lied or withheld information. However, plaintiff's testimony at her trial was that she did not kick the officers and in fact did not resist arrest at

---

[10] Judge Kennelly held that the plaintiff could recover nominal damages for the alleged violations of his right to a fair trial. 249 F. Supp. at 1023-25 (citing Carey v. Piphus, 435 U.S. 247 (1978)).

all.  That testimony is sufficient to create a genuine issue of fact for trial.

Defendants' motion for summary judgment will be denied as to Count II.

**D.   Previously-Dismissed Claims**

In our Memorandum Opinion of July 7, 2004, we dismissed plaintiffs' claims for assault and battery (Count VI) and for violation of 725 ILCS 5/103-1 (Count VII) as time-barred by the Illinois Tort Immunity Act's one-year statute of limitations.

We also noted that although none of the numbered counts of the Amended Complaint were explicitly labeled as Sixth Amendment claims, there were references to the Sixth Amendment in paragraphs 1 and 14(a).  To the extent that plaintiff was attempting to allege a violation of her Sixth Amendment rights, it was dismissed for failure to state a claim.

The Second Amended Complaint re-alleges Counts VI and VII and contains the same references to the Sixth Amendment.  Those claims are again dismissed.[11]

**E.   Qualified Immunity**

Defendants' final argument is that they are entitled to qualified immunity on plaintiff's claims.  They rely again on

---

[11]/  A repleading of previously-dismissed claims is unnecessary to preserve those claims for appeal.  See Bastian v. Petren Res. Corp., 892 F.2d 680, 682-83 (7th Cir. 1990).

<u>Devenpeck</u>, without explanation, and their argument is too conclusory to warrant analysis.

## **CONCLUSION**

Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted as to plaintiff's Fourth Amendment false arrest claim. The motion is denied as to plaintiff's Fourth Amendment search and detention claims as well as to Counts II, III, IV, and V.

Counts VI and VII are dismissed with prejudice, and to the extent that plaintiff is attempting to allege a violation of her Sixth Amendment rights, that claim is dismissed with prejudice.

DATE: November 1, 2005

ENTER: _____
John F. Grady, United States District Judge